757 So.2d 712 (1999)
Augustine CAIN
v.
WINN-DIXIE LOUISIANA, INC.
No. 98 CA 0792.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
Writ Denied December 17, 1999.
C. Jerome D'Aquila, New Roads, for Plaintiff-Appellee Augustine Cain.
David J. Calogero, Lafayette, for Defendant-Appellant Winn-Dixie Louisiana, Inc.
Before: LeBLANC, FOGG, and PARRO, JJ.
PARRO, J.
From a judgment in favor of the plaintiff in this food product case, the defendant store appeals. For the following reasons, this court reverses and renders.

*713 Factual Background and Procedural History

On Sunday, July 10, 1994, Jonas Cain purchased a lemon-coconut flavored cake from the Winn-Dixie store in New Roads, Louisiana. The cake was packaged in a plastic container, which had a domeshaped, snap-on lid that fit snuggly into the bottom plate on which the cake rested. Affixed to the plastic container was a little white sticker with Winn-Dixie printed on it.
Mr. Cain's wife, Augustine Cain, decided to eat a piece of cake with vanilla ice cream later that same day. The evidence reveals that after she consumed a few bites of the cake and ice cream, she discovered a long brownish strand of hair in the piece of cake that she was preparing to eat. Upon seeing the hair, she stood up, told her husband of her discovery, and gagged. She then went to the bathroom and began to vomit. She called the store later that night to report the incident. During the night, she vomited three or four times when she thought of eating cake with hair in it. The next morning she went to see Dr. Paul B. Rachal, whose diagnosis was gastroenteritis. He thought she possibly had food poisoning or a viral illness. He prescribed medication for nausea. That same morning, the Cains brought the cake with them when they went to consult with an attorney. Ten days later, she saw her regular family physician, Dr. Harry J. Kellerman. Two months post incident, on advice of counsel, she saw Dr. Robert T. Snyder, a psychologist, with complaints of sleepless nights and excessive nausea. Dr. Snyder's diagnosis was post traumatic stress syndrome, which he related to the July 10, 1994 incident.
Ms. Cain filed suit against Winn-Dixie Louisiana, Inc. (Winn-Dixie) seeking damages due to the negligent acts of Winn-Dixie and for breach of the implied warranty of fitness owed by Winn-Dixie as manufacturer of the cake. After a trial in this matter, the trial court found that Ms. Cain suffered or was suffering from an eating disorder associated with a traumatic experience. Furthermore, it found that Ms. Cain established the cake was under Winn-Dixie's direct control and had a Winn-Dixie label on its outer packaging. Based on these findings and apparently the theory of strict liability, the trial court signed a judgment in favor of Ms. Cain and awarded her $17,000 in damages $10,000 for mental anguish and $7,000 for physical pain and suffering and medical expenses. Winn-Dixie appeals and contends the trial court erred in (1) imposing liability on Winn-Dixie absent proof that it actually manufactured the cake, (2) awarding damages for the mere observation of a foreign object in the cake, and (3) failing to raise an adverse presumption against Ms. Cain for her failure to authenticate and introduce the offending hair. In the event liability is upheld by this court, Winn-Dixie submits the award of damages is excessive and suggests $2,000 as an appropriate award.

Applicable Law
Porteous v. St. Ann's Cafe & Deli, 97-0837 (La.5/29/98), 713 So.2d 454, contains the Louisiana Supreme Court's latest pronouncement regarding the law applicable to determine the liability of a food provider when a customer is injured by a harmful substance in the food. In Porteous, a diner filed suit against a restaurant for injuries he sustained to his tooth when he bit into a pearl while eating an oyster po-boy. In his petition, the diner alleged that the restaurant was negligent because of the lack of adequate food inspection procedures, which resulted in the presence of an injurious substance that caused injury to his tooth. Applying the "foreign-natural" test[1] adopted from the common law, the *714 trial court held that although the injurious pearl was natural to the oyster, the restaurant was negligent, and therefore liable, because it lacked adequate procedures to ensure that injurious substances, such as a pearl in the oyster, were not served in the po-boys. Porteous, 713 So.2d at 455. The court of appeal affirmed the trial court judgment.
The supreme court granted certiorari to determine if the law and the facts were properly applied in Porteous, which the supreme court categorized as a restaurant-harmful food product case. After ruling that the lower courts erred in applying the foreign-natural test, the supreme court stated that the restaurant's liability should be determined by applying the Louisiana Civil Code articles relating to liability and damages for offenses and quasi-offenses the traditional duty risk tort analysis. Porteous, 713 So.2d at 455. Noting the absence of a statute addressing a commercial restaurant's duty in Louisiana, the supreme court determined that a food provider, in selecting, preparing, and cooking food, including the removal of injurious substances, has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food. Porteous, 713 So.2d at 457. Ultimately, the court held that the plaintiff had failed to prove that the restaurant breached its duty to act as would a reasonably prudent restauranteur in selecting, preparing, and cooking food, including removal of injurious substances. Porteous, 713 So.2d at 456.
In reviewing the Porteous case, we note the Louisiana Supreme Court specifically found that the duty risk tort analysis in Louisiana negligence law is the proper analysis for restaurant-harmful food product cases. Porteous, 713 So.2d at 455 n. 1. Although the supreme court noted two other areas of substantive law (namely, sales and obligations articles on breach of contract and the sales articles on redhibition) arguably could apply in this type of case, it failed to mention the Louisiana Products Liability Act (LPLA), which establishes the exclusive theories of recovery against manufacturers for damage caused by their products.
The omission of a reference to the LPLA does not necessarily preclude a determination that the LPLA is applicable to food products that are prepared for sale to consumers.[2] However, in light of the supreme court's ruling in Porteous, we are constrained to determine the liability of Winn-Dixie by utilizing the traditional duty risk tort analysis. Although Winn-Dixie is not a commercial restaurant, we conclude that by having an in-house bakery, which prepared baked goods for sale to its customers, Winn-Dixie functioned as a food provider and is held to the same duty of care set forth in Porteous.[3]

Discussion
In her petition, Ms. Cain simply alleged that Winn-Dixie was negligent in its preparation of the cake in that it was unclean, unwholesome, and unfit for consumption or contained a foreign substance. The trial court essentially found that some hair-like substance was in the cake and that the cake was not fit for consumption. The trial court also found that this cake had been under the direct control of Winn-Dixie before its sale to Ms. Cain's husband. Winn-Dixie was found to be liable, although the basis of liability is not clear. *715 Apparently, the trial court concluded that the presence of a foreign substance (hair) in the cake sold by Winn-Dixie was sufficient evidence to hold Winn-Dixie strictly liable. This conclusion is an application of the foreign-natural test which the Porteous court discarded.
However, since the judgment in this case was rendered before the supreme court's decision in Porteous, the trial court did not have the benefit of the supreme court's analysis regarding the nature of the duty owed by Winn-Dixie in this case. As a general rule, appellate courts are bound to adjudge a case before it in accordance with the law existing at the time of the appellate court's decision. Where the law has changed during the pendency of the suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment that may have been correct under the law in effect when it was rendered. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). Thus, we will analyze the issues in this matter in accordance with the standards set forth in Porteous.
In this case, Ms. Cain alleges that she was injured as a result of observing a piece of hair in the piece of cake she was preparing to eat. There is no testimony by Ms. Cain that she actually remembered ingesting any hair or having any hair in her mouth, even though she did eat some of the cake itself. Although the piece of hair was a foreign substance in the cake, common knowledge or common experience suggests that prepared food such as a cake might contain a piece of hair and that people should be alert to the possibility that a piece of hair may be found in prepared food. See Porteous, 713 So.2d at 457; Johnson v. South Pacific Canning Co., 580 So.2d 556, 557-558 (La.App. 1st Cir.1991); Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421, 426 (La.App. 1st Cir.), writs denied, 248 La. 468, 469, 179 So.2d 641 (1965). So long as humans are involved with the preparation of food products such as the cake in question, there will occasionally, though perhaps infrequently, be a piece of hair that falls into the batter.
Furthermore, the record is devoid of how often hair may have been observed in baked goods prepared by Winn-Dixie's bakery department. Although a Winn-Dixie employee was called to testify, he was not asked about the bakery's preparation or inspection procedures to ensure that there were no foreign objects in its baked goods, or the procedure for the removal of injurious substances that may be found. In the absence of such evidence, we conclude the record contains insufficient proof to support a finding that Winn-Dixie did not act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food. We determine, therefore, that Ms. Cain failed to meet her burden of proof that Winn-Dixie was negligent in its preparation of the cake. Accordingly, the trial court erred in finding that Winn-Dixie was liable under the facts of this case.

Decree
For the foregoing reasons, the judgment of the trial court is reversed, and Augustine Cain's suit is dismissed. Costs of this appeal are assessed to Augustine Cain.
REVERSED AND RENDERED.
LeBLANC, J., concurs in the result.
NOTES
[1] Under the foreign-natural test, if the injurious substance is foreign to the food, then the restaurant is strictly liable. If the injurious substance is natural to the food, there is no strict liability. Rather, liability is imposed only if the restaurant was negligent in failing to discover and remove the harmful natural substance from the food. Porteous, 713 So.2d at 455.
[2] This court can find nothing in the LPLA that precludes its application in cases involving this type of corporeal movable.
[3] For purposes of discussion of Winn-Dixie's liability under the theory of negligence, we will assume that the cake in question was prepared in the store's bakery department. In light of the conclusions reached in this opinion on the issue of negligence, we pretermit discussion of whether Ms. Cain proved Winn-Dixie prepared the cake that was purchased by Mr. Cain.